UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS RUIZ-HERNANDEZ,<br><br>Defendant. | CASE NO. CR22-0197JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Defendant Jesus Ruiz-Hernandez's second motion for release from custody. (Mot. (Dkt. # 58).) Plaintiff the United States of America (the "Government") opposes the motion. (Resp. (Dkt. # 68).) Mr. Ruiz-Hernandez did not file a reply. (*See* Dkt.) The court has reviewed the parties' submissions, the relevant portions of the record, and applicable law. Being fully advised,[1] the court DENIES Mr.

---

[1] Mr. Ruiz-Hernandez requests oral argument (*see* Mot. at 1), but the court concludes oral argument would not be helpful to its disposition of the motion, *see* W.D. Wash. Local Rules LCR 7(b)(4).

ORDER - 1

Ruiz-Hernandez's motion and ORDERS that Mr. Ruiz-Hernandez remain detained pending trial.

## II. BACKGROUND

Mr. Ruiz-Hernandez was arrested on charges related to alleged exploitation of noncitizens for financial gain on November 14, 2022. (Indict. (Dkt. # 1); Warrant Executed (Dkt. # 6).) Mr. Ruiz-Hernandez was detained and then released on bond on November 22, 2022. (*See* 11/22/22 Min. Entry (Dkt. # 19).) While Mr. Ruiz-Hernandez was out on bond, the Government received information regarding additional alleged victims of Mr. Ruiz-Hernandez and filed a superseding indictment on March 28, 2023, adding four additional charges—including charges alleging conduct that violated the terms of Mr. Ruiz-Hernandez's release. (Super. Indict. (Dkt. # 36).) Mr. Ruiz-Hernandez was arrested again on March 30, 2023, and United States Magistrate Judge Mary Alice Theiler ordered Mr. Ruiz-Hernandez to be detained pending trial because Mr. Ruiz-Hernandez's unknown immigration status, prior removals from the country, and ties to Mexico made him a flight risk. (*See* 3/30/23 Order (Dkt. # 44).) On July 18, 2023, the Government filed a second superseding indictment against Mr. Ruiz-Hernandez, adding thirteen additional charges. (2d. Super. Indict. (Dkt. # 54).)

According to the Government, Mr. Ruiz-Hernandez has extensively tampered with witnesses, both while out on bond and via telephone from within the Federal Detention Center ("FDC"). (*See* Resp. at 15-16.) Specifically, the Government states that Mr. Ruiz-Hernandez instructed his employees—some of whom are also alleged victims—to lie to law enforcement and tried to intimidate some of his other alleged victims by telling

them that they could face trouble if they spoke to law enforcement, due to the circumstances of their arrival in the United States.  (*Id*. at 15.)  While in custody, Mr. Ruiz-Hernandez also contacted his girlfriend and his brothers for assistance in discouraging alleged victims from speaking with law enforcement, and in instructing the alleged victims on what to say to law enforcement.  (*Id*. at 16.)  Additionally, Mr. Ruiz-Hernandez allegedly asked his girlfriend and brothers for help changing the titles of certain vehicles that he owned, allegedly to protect the vehicles from forfeiture.  (*Id*.)  These calls from the FDC were recorded and their contents translated from Spanish to English.  (*See id*.)

Per Magistrate Judge Theiler's March 30, 2023 order, Mr. Ruiz-Hernandez remains in custody pending trial on October 10, 2023.  (*See* 3/30/23 Order; *see also* 8/2/23 Min. Order (Dkt. # 66) (describing discussions regarding trial date).)  Mr. Ruiz-Hernandez faces trial on the following charges:  two counts of forced labor; four counts of transporting an alien for financial gain; seven counts of harboring an alien for financial gain; three counts of bringing an alien to the United States for financial gain; one count of conspiracy to commit money laundering; two counts of money laundering – concealment; three counts of money laundering – international promotion; and one count of unlawful possession of ammunition.  (2d. Sup. Indict. at 1-16.)  Mr. Ruiz-Hernandez now asks the court to order his release from the FDC and allow him to await trial under house arrest on Vashon Island subject to electronic monitoring.  (Mot. at 1-2.)

## III. ANALYSIS

Below, the court reviews the legal standard for releasing a pretrial detainee before turning to Mr. Ruiz-Hernandez's motion and the Government's arguments in opposition.

### A. Legal Standard

The Bail Reform Act provides that persons facing trial are to be released under the least restrictive conditions that will "reasonably assure" their appearance as required and the safety of the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); 18 U.S.C. § 3142(c)(1). Release on bond should be denied only when no such conditions will accomplish these purposes. 18 U.S.C. § 3142(e). In determining whether there are "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community[,]" the court must consider: (1) the nature and circumstances of the charged offense, including whether the offense is a crime of violence, to which a rebuttable presumption of detention applies; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. *Id*. § 3142(e)(3), (g). The weight of the evidence against a defendant is the "least important of the various factors." *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008). "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *Gebro*, 948 F.2d at 1121. Any "doubts regarding the propriety of release

should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

The Bail Reform Act provides that a pretrial detainee may request release from custody by either asking the court to reopen a detention hearing in light of newly discovered material information, *see* 18 U.S.C. § 3142(f)(2), or by appealing a magistrate judge's detention order to a district judge for de novo review, *id*. § 3145(b). A motion to reopen a detention hearing must proffer information that (1) was not available to the movant at the original detention hearing and (2) has a material bearing on whether there are "conditions of release that will reasonably assure the [detainee's] appearance [at trial] and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). A magistrate judge's detention order is subject to de novo review by the district court judge. *United States v. Koenig*, 912 F.2d 1190, 1191-93 (9th Cir. 1990).

**B.    Mr. Ruiz-Hernandez's Motion**

Mr. Ruiz-Hernandez styles his motion as an opposition to detention in the first instance, rather than a motion to reopen the detention hearing or an appeal of Magistrate Judge Theiler's order. (*See* Mot. at 2 (arguing that none of the "six instances that permit a court to convene a detention hearing" apply to Mr. Ruiz-Hernandez and the charges against him).) In an abundance of caution, the court reviews Mr. Ruiz-Hernandez's motion both as a motion to reopen the hearing and as an appeal from the detention order.

1. <u>Mr. Ruiz-Hernandez's Motion to Reopen the Detention Hearing</u>

Mr. Ruiz-Hernandez does not identify any new information material to whether any conditions may guarantee his appearance and the safety of the public, as required to

reopen the detention hearing. *See* 18 U.S.C. § 3142(f)(2); (*see generally* Mot.). Instead, Mr. Ruiz-Hernandez submits six letters from friends and neighbors generally attesting to his positive personality traits, but none presents information that is material to any of the § 3142(g) factors or that was unavailable at the March 30, 2023 detention hearing. (*See* Bishop Email (Dkt. # 58-4); Massey Statement (Dkt. # 58-5); O'Brien/Lingel Letter (Dkt. # 58-6); O'Laughlin Email (Dkt. # 58-7); Rice Email (Dkt. # 58-8); Sahagun Letter (Dkt. # 58-9).) Therefore, the court DENIES Mr. Ruiz-Hernandez's motion to reopen the detention hearing for failure to present new, material information warranting his release.

2. Mr. Ruiz-Hernandez's Appeal of the Detention Order

As a preliminary matter, Mr. Ruiz-Hernandez's motion to appeal Magistrate Judge Theiler's detention order is untimely. This District's Local Magistrate Judge Rules require a litigant to appeal a magistrate judge's ruling to a district judge within fourteen days of the entry of the ruling. W.D. Wash. Local Magistrate Judge Rules MJR 12(c). Magistrate Judge Theiler entered the detention order on March 30, 2023; the deadline for Mr. Ruiz-Hernandez's appeal was therefore April 13, 2023. (*See* 3/30/23 Order.) But Mr. Ruiz-Hernandez filed the instant motion more than three months later, on July 25, 2023. (*See* Mot.) Thus, the court DENIES Mr. Ruiz-Hernandez's motion as untimely.

Even if Mr. Ruiz-Hernandez's motion were timely, the court would deny it because the Government has established that Mr. Ruiz-Hernandez poses a serious flight risk and a danger to the community. The court reviews each of the § 3142(g) factors in turn.

1    First, the nature and circumstances of the offenses charged strongly favor a finding
2    of dangerousness.  To begin, the Bail Reform Act defines Mr. Ruiz-Hernandez's charges
3    related to forced labor and the allegations that Mr. Ruiz-Hernandez used aggravated
4    sexual abuse to obtain forced labor from one of his victims as crimes of violence.  (*See*
5    2d. Super. Indict. at 1-4 (charging Mr. Ruiz-Hernandez with forced labor in violation of
6    18 U.S.C. § 1859)); 18 U.S.C. § 3142(e)(3)(D) (explaining that a rebuttable presumption
7    of detention applies to defendants charged with certain felony violations of 18 U.S.C.
8    § 1859, *inter alia*).  Accordingly, there is a presumption of detention attending two of the
9    charges that Mr. Hernandez.  (*See* Mot. at 3-4 (stating only that "there is no presumption
10   of detention in this case.").)  Mr. Ruiz-Hernandez, however, does not come close to
11   rebutting this presumption in light of the violent and dangerous nature of the offenses Mr.
12   Ruiz-Hernandez allegedly committed and the circumstances under which he committed
13   them.  For example, the Government alleges that Mr. Ruiz-Hernandez trafficked
14   vulnerable individuals into the United States, and sexually abused one of his victims.
15   (*See* 2d. Super. Indict. at 2-9; Resp. at 6.)  Additionally, Mr. Ruiz-Hernandez is alleged to
16   have committed a number of other serious offenses, including possessing ammunition
17   and using additional victims' immigration statuses to exploit them, while on bond.  (*See*
18   2d. Super. Indict. at 2-9, 16-19; Resp. at 15-16.)  For these reasons, the court concludes
19   that the nature and circumstances of the offenses charged weigh in favor of a finding of
20   dangerousness.
21   Second, the weight of the evidence against Mr. Ruiz-Hernandez—although the
22   least important of these factors—is strong and counsels in favor a finding of

dangerousness. *See Hir*, 517 F.3d at 1090. According to the Government, seven of Mr. Ruiz-Hernandez's alleged victims have given statements substantiating the charges against him. (Resp. at 20.) The Government states further that additional evidence, such as Mr. Ruiz-Hernandez's own social media posts, financial records, and handwritten ledgers, corroborates these statements. (*Id*.) Mr. Ruiz-Hernandez does not argue that the weight of the evidence against him is insufficient to warrant detention. (*See generally* Mot.) Thus, the court concludes that the weight of the evidence against Mr. Ruiz-Hernandez is strong and weighs in favor of a finding of dangerousness.

Third, Mr. Ruiz-Hernandez's history and characteristics weigh in favor of detention. Under this factor, the court considers, among other things, the accused's family tiles, employment, length of residence in the community, community ties, past conduct, and criminal history. 18 U.S.C. § 3142(g)(3)(A). Mr. Ruiz-Hernandez asserts that he lacks prior criminal history. (Mot. at 3.) But the Pretrial Services Report shows that Mr. Ruiz-Hernandez was previously charged with driving under the influence and with four immigration-related infractions between 2011 and 2017. (*See* PTS (Dkt. # 5 (sealed)) at 2-3 (listing four separate unauthorized entries and re-entries into the United States between 2011 and 2017).) Moreover, Mr. Ruiz-Hernandez's conduct since his initial arraignment in this action demonstrates that he cannot be trusted to follow the law if released. (*See, e.g.*, 2d Resp. at 10-14 (alleging that Mr. Ruiz-Hernandez continued to harbor and exploit four of his victims); *see also* 2d. Super. Indict. at 6-9 (adding criminal charges related to this conduct).) Although the court acknowledges Ruiz-Hernandez's ties to the Vashon Island community and the statements of his neighbors and

acquaintances (*see* Bishop Email; Massey Statement; O'Brien/Lingel Letter; O'Laughlin Email; Rice Email; Sahagun Letter), the court concludes that Mr. Ruiz-Hernandez's history and characteristics weigh in favor of a finding of dangerousness.

Fourth, the court concludes that "the nature and seriousness of the danger to . . . the community that would be posed by [Mr. Ruiz-Hernandez's] release" is significant. 18 U.S.C. § 3142(g)(4). The Government argues that Mr. Ruiz-Hernandez threatened multiple victims and tampered with witnesses even after being released on bond in November 2022, and again while in pretrial detention. (*See* Resp. at 20-22.) The Government asserts that it has recordings of Mr. Ruiz-Hernandez's phone calls from the FDC as well as statements from the alleged victims to substantiate these allegations. (*See id*. at 15.) Gregory Hoover, counsel for Mr. Ruiz-Hernandez states that, prior to the second superseding indictment, an attorney for the Government informed Mr. Hoover that Mr. Ruiz-Hernandez had not had contact with three of his seven alleged victims. (Hoover Decl. (Dkt. # 58-2) ¶ 3.) Additionally, if released, Mr. Ruiz-Hernandez "promise[s] not to contact or attempt to contact any witnesses, or potential witnesses, in this case." (Ruiz-Hernandez Decl. (Dkt. # 58-1) ¶ 6.) But Mr. Ruiz-Hernandez does not refute the Government's allegations that he threatened or asked his brothers and girlfriend to threaten the remaining alleged victims. (*See generally* Mot.) Moreover, several of the charges in the superseding and second superseding indictments are based on conduct that allegedly occurred while Mr. Ruiz-Hernandez was out on bond, having already been charged with crimes for similar conduct. (*See* Resp. at 15-16; Sup. Indict.; 2d Sup. Indict.) Therefore, the court concludes that this factor weighs in favor of a finding of

dangerousness. Considering the four factors listed in 18 U.S.C. § 3142(g), the court concludes that the Government has carried its burden in establishing by clear and convincing evidence that Mr. Ruiz-Hernandez would pose a danger to the community if released on bond.

The court further concludes that a preponderance of the evidence supports a finding that Mr. Ruiz-Hernandez is a flight risk. Mr. Ruiz-Hernandez argues that his community ties on Vashon Island establish that he is not a flight risk. (Mot. at 3-4.) The Government responds that Mr. Ruiz-Hernandez is a flight risk because of his history of leaving, entering, and re-entering the United States without authorization, prior use of an alias, unknown immigration status, and familial connections in Mexico. (Resp. at 22.) The Government also cites the strength of the evidence against Mr. Ruiz-Hernandez and the significant mandatory minimum sentences that many of the charges carry, arguing the high penalties and likelihood of conviction "provide ample incentive" for Mr. Ruiz-Hernandez to flee prosecution.[2] (*Id*. at 20, 22.) On the present record, the court concludes that the Government has carried its burden in establishing by a preponderance of the evidence that Mr. Ruiz-Hernandez is a flight risk.

//

//

---

[2] Mr. Ruiz-Hernandez argues further that an immigration detainer is not a factor in this analysis. (Mot. at 2 (quoting *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019)).) But *Diaz-Hernandez* requires only that the court "conduct an individualized evaluation that is guided by the [§ 3142(g)] factors," of which the presence of an immigration detainer is not one. *Diaz-Hernandez*, 943 F.3d at 1199. Here, the Government does not rely on an immigration detainer as evidence that Mr. Ruiz-Hernandez presents a flight risk. (*See* Resp. at 20, 22.)

In sum, the Government has carried its burden to establish that Mr. Ruiz-Hernandez is a flight risk and a danger to the community and should therefore remain in pretrial detention.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Ruiz-Hernandez's second motion for release from custody (Dkt. # 58) and ORDERS that Mr. Ruiz-Hernandez remain in federal custody pending trial on October 10, 2023.

Dated this 18th day of August, 2023.

JAMES L. ROBART
United States District Judge