UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JESUS RUIZ-HERNANDEZ,<br><br>　　　　　　　　Defendant. | CASE NO. CR22-0197JLR<br><br>ORDER |

## I.　INTRODUCTION

Before the court is Defendant Jesus Ruiz-Hernandez's motion to suppress statements made during his November 14, 2022 interview with federal officers. (Mot. (Dkt. # 90); *see* Interview Tr. (Dkt. # 94) (sealed).) Plaintiff the United States of America (the "Government") opposes the motion. (Resp. (Dkt. # 94).) Mr. Ruiz-Hernandez did not file a reply brief. (*See generally* Dkt.) The court has considered

//

//

ORDER - 1

the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[1] the court DENIES Mr. Ruiz-Hernandez's motion to suppress.

## II. BACKGROUND

Mr. Ruiz-Hernandez stands accused of 16 counts of human trafficking, six counts of money laundering, and one count of unlawful possession of ammunition. (3rd Indict. (Dkt. # 54) at 1-16; *see also* 1st Indict. (Dkt. # 1); 2nd Indict. (Dkt. # 36).) He was first indicted on November 9, 2022. (1st Indict. at 1.) Five days later, on November 14, 2022, he was interviewed by Special Agent Christopher Miranda and Detective Megan Zentner of Homeland Security Investigations (together, the "Officers"). (*See generally* Interview Tr.) Although Mr. Ruiz-Hernandez is a native Spanish speaker, the interview was conducted in English. (*See generally id.*)

At the time of the interview, Mr. Ruiz-Hernandez was 45 years old and told the Officers that he first came to the United States when he was 17. (*Id.* at 113:6-7.) He picked grapes in California before settling down on Vashon Island approximately 23 years ago. (*Id.* at 6:25-7:3.) He also told the Officers that he and his brothers owned a landscaping business on Vashon Island that had been serving residential clients for the last six years. (*Id.* at 9:5-9, 92:9-12; Zentner Decl. (Dkt. # 94-2) ¶ 14.)

Throughout the interview, Mr. Ruiz-Hernandez indicated that he understood the Officers' questions and responded to them in English. After the Officers read Mr.

---

[1] Mr. Ruiz-Hernandez requests oral argument. (*See* Mot. at 1.) The court concludes, however, that oral argument would not be helpful to its disposition of Mr. Ruiz-Hernandez's motion. *See* Local Rules W.D. Wash. CrR 12(b)(12).

Ruiz-Hernandez his *Miranda* rights, he responded "[o]kay" and said that he would "love to" answer the Officers' questions. (Interview Tr. at 2:25-4:5.) When prompted to sign and date the waiver, Mr. Ruiz-Hernandez asked what the date was before writing it down. (*See id.* at 4:12-16.) When he was unsure what the Officers' questions meant, he asked for clarification. (*See, e.g., id.* at 4:24-25 ("'For financial gain,' what does that mean?").)

Mr. Ruiz-Hernandez now argues that the Officers' failure to "properly read his *Miranda* rights" in Spanish violated his constitutional rights. (Mot. at 3.) The court first sets forth the relevant legal standard before turning to the merits of Mr. Ruiz-Hernandez's motion.

### III. ANALYSIS

**A. Legal Standard**

The Fifth and Fourteenth Amendments of the United States Constitution require police, before starting a custodial interrogation, to advise a criminal suspect that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Custodial statements are inadmissible unless the suspect "knowingly and intelligently decides to forgo those rights." *United States v. Loucious*, 847 F.3d 1146, 1149 (9th Cir. 2017). No "precise formulation" of the warning given to the suspect is required. *California v. Prysock*, 453 U.S. 355, 359 (1981) (per curiam). The warnings must, however, "reasonably convey to [the] suspect his

//

1 | rights as required by *Miranda*." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (brackets and internal quotations omitted) (quoting *Prysock*, 453 U.S. at 361).

There is a "presumption against waiver." *James v. Arizona*, 469 U.S. 990, 998 (1984) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The Government "bears the burden" of proving "by a preponderance of the evidence" that a suspect knowingly and intelligently waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). To satisfy its burden, the Government must introduce evidence sufficient to establish that, under the "totality of the circumstances," the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). If the Government cannot establish the "requisite level of comprehension," the statements must be suppressed. *Id.*; *see also United States v. Garibay*, 143 F.3d 534, 537, 539 (9th Cir. 1998) (suppressing statements because the prosecution did not prove that the suspect's "English-language skills were sufficient for him to understand and waive his constitutional rights").

**B.     Mr. Ruiz-Hernandez's Motion to Suppress**

Mr. Ruiz-Hernandez argues that the Officers should have provided his *Miranda* rights in Spanish. (Mot. at 8-9.) Mr. Ruiz-Hernandez "sp[eaks] English well" but has "little understanding of legal words." (*Id.* at 3.) During court proceedings, he has asked for an interpreter so that he could "fully understand what [was] being told to him." (*Id.* at 8-9.) He is also not proficient in English reading or writing. (*See id.* at 8.) Notably, Mr.

//

Ruiz-Hernandez does not argue that he did not understand his rights or any of the warnings the Officers read to him. (*See generally id.*)

The Government argues that Mr. Ruiz-Hernandez "comfortably understood and responded to" the Officers' questions during his interview and "regularly used English to conduct his landscaping business." (Resp. at 8; *see also* Zentner Decl. ¶ 17 (stating that Mr. Ruiz-Hernandez "operated a landscaping business that required communication with a largely English-speaking clientele on Vashon Island").) When Detective Zentner reviewed "digital devices, ledgers, and business records found in [Mr. Ruiz-Hernandez's] residence and vehicles," she saw "numerous examples of [Mr. Ruiz-Hernandez] communicating with clients in English about scheduling, the need for various landscaping tasks, and billing." (Zentner Decl. ¶ 17.) And during the interview, Mr. Ruiz-Hernandez "never indicated he did not understand the agents' questions and never requested an interpreter." (Resp. at 11.) The Officers concluded that Mr. Ruiz-Hernandez understood English, understood his *Miranda* rights, and voluntarily consented to being interviewed without an attorney present. (Zentner Decl. ¶ 18; Miranda Decl. (Dkt. # 94-3) ¶ 15.) Mr. Ruiz-Hernandez did not file a reply in response to the Government's arguments. (*See generally* Dkt.)

The court agrees with the Government that the preponderance of the evidence shows that Mr. Ruiz-Hernandez knowingly and intelligently waived his *Miranda* rights. There is no dispute that Mr. Ruiz-Hernandez, who has spent more than half of his life on Vashon Island, speaks English well, and the Officers read his *Miranda* rights aloud before he signed the waiver. *See United States v. Amano*, 229 F.3d 801, 805 (9th Cir.

2000) (affirming waiver of *Miranda* rights where a Japanese defendant "appeared to understand and converse comfortably in English" with police officers and "a variety of English-language materials" were discovered in his home). Mr. Ruiz-Hernandez appeared to understand his rights, as he said "[o]kay" after they were read to him and said he was willing to answer the Officers' questions. (Interview Tr. at 3:6-4:5.) Mr. Ruiz-Hernandez had no difficulties asking for clarity when needed, but he did not do so after the Officers read him his *Miranda* rights. (*See id.*) Moreover, he does not presently argue that he failed to understand his rights or the gravity of waiving them. (*See generally* Mot.) There is also no evidence that Mr. Ruiz-Hernandez is mentally incompetent. To the contrary, he is a businessman, and his answers to the Officers' questions were responsive and detailed. (*See generally* Interview Tr.) Although Mr. Ruiz-Hernandez was not advised of his rights in Spanish and has no prior experience with the criminal justice system (*see id.* at 2:13-15), the totality of the circumstances indicates that his waiver was knowing and voluntary. *See United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007) (listing factors to consider in determining whether waiver was knowing and voluntary).

Accordingly, Agent Miranda and Detective Zentner did not violate Mr. Ruiz-Hernandez's constitutional rights by reading his *Miranda* rights in English and asking him to sign a waiver written in English.[2]

---

[2] Mr. Ruiz-Hernandez also argues that the Officers violated his rights under the Washington State Constitution (Mot. at 3), but Washington law does not govern this federal case. Furthermore, he argues that the Officers failed to obtain his consent to record the interview, but the Officers "explained to [him] that [they] were going to start a video recording" and placed a

### IV.   CONCLUSION

For the foregoing reasons, the court DENIES Mr. Ruiz-Hernandez's motion to suppress (Dkt. # 90).

Dated this 7th day of December, 2023.

                         JAMES L. ROBART
                         United States District Judge

---

video camera "directly in front of" Mr. Ruiz-Hernandez before the Interview. (Zentner Decl. ¶ 10.) Mr. Ruiz-Hernandez was also on notice that anything he said could be used against him in a court of law. (Interview Tr. at 3:6-8.)

ORDER - 7